

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the

### Southern District of California

**FILED**

NOV 0 8 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Black Pixel 3 Google Cellular Phone, Black Amazon
Tablet ,Black Lenovo Laptop , Black Motorola Cell
Phone,Black Crosstour 1090P WiFi

)
)
)
)
)
)

Case No.

18 MJ 5764

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. §§ 2252 and 2252A | Offenses involving child pornography |
| 18 U.S.C. § 2422(b) | Attempted Enticement of a Minor |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kayade Ereme / HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11-8-18

_____
*Judge's signature*

City and state: San Diego, CA

Hon. Robert A. McQuaid, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Special Agent Kayade Ereme, upon being duly sworn do hereby state that the following is true to my knowledge and belief:

### INTRODUCTION

1.      I am a Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and have been so employed since April 2013. I am currently assigned to the HSI Child Exploitation Group in San Diego, California. From August 2014 until March 2018, I was assigned to the Deputy Special Agent in Charge San Ysidro (DSAC San Ysidro Office) in San Diego, California where I specialized in narcotics and contraband smuggling investigations. I was assigned to a narcotics smuggling unit known as the San Diego County Sheriff's Border Crime Suppression Team. My duties included investigating the illicit trafficking of controlled substances into the United States of America while working in conjunction with the San Diego County Sheriff's Department. I was previously assigned to the Office of the Special Agent in Charge, Baltimore (SAC Baltimore), where I worked with the Gang Unit and assisted in the investigation of a Racketeering Influenced and Corrupt Organization (RICO) investigation targeting the MS-13 Street Gang and their affiliates.

2.      I graduated Magna Cum Laude from Bowie State University with a Bachelor of Science Degree in Criminal Justice. I am a graduate of the Criminal Investigator Training Program administered by the Federal Law Enforcement Training Center (FLETC) located in Glynco, CA, as well as the HSI Special Agent Training (HSISAT) program. Throughout my tenure with HSI, I have conducted and/or participated in numerous investigations including narcotics, financial crimes, and child pornography investigations. I have received specialized training in

1

conducting Internet investigations regarding the sexual exploitation of minors, child pornography, and the preservation and review of computer related evidence. As part of my current duties with the ICAC task force, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2252, 2252A, and 2422(b). Additionally, I have had the opportunity to observe and review many examples of child pornography (as defined in 18 U.S.C. § 2256) in numerous forms of media including computer media, and I have participated in the execution of numerous search and arrest warrants.

3.      I make this affidavit in support of an application by the United States of America for a search warrant for the following items (collectively referred to herein as the "**Target Devices**," all of which are currently located at the San Diego HSI Office, 880 Front Street, Suite 3200, San Diego CA 92101, in the Southern District of California, as more particularly described in Attachment A:

- **Black Pixel 3 Google Cellular Phone,**
- **Black Amazon tablet (ModelSV98LN, FCC ID:2AETF-1013)**
- **Black Lenovo Laptop (Product ID 259842U, MAC Address C80AA99C4E3A)**
- **Black Motorola cell phone (0168)**
- **Black Crosstour 1090P WiFi**

and to seize items that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, 18 U.S.C. §§ 2252, 2252A, and 2422(b), as further described in Attachment B.

4.      The information set forth in this affidavit is based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of

1   documents and computer records related to this investigation, communications with
2   others who have personal knowledge of the events and circumstances described
3   herein, and information gained through my training and experience.  Because this
4   affidavit is submitted for the limited purpose of establishing probable cause, it does
5   not set forth each and every fact that I or others have learned during the course of
6   this investigation.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

7

8   5.      On or about October 27, 2018, Homeland Security Investigations
9   (HSI), Special Agent in San Diego, California began communicating with an
10  individual on the chatting platform known as Omegle.[1]  During the communication,
11  the HSI Special Agent, acting in an undercover capacity and posing as a 12-year-old
12  female from Eastlake, California (UC agent), responded to an individual online
13  identifying himself as "Colin."  During the course of the communications, "Colin"
14  communicated with the UC using the email address emraldmonth@gmail.com and
15  the moniker "Cory O'Hoole."  As detailed below, "Colin" aka "Cory O'Hoole" has
16  been identified as Cory Alan ELGIN.

17  6.      On October 27, 2018, ELGIN initiated communication with the UC
18  through the Omegle chatting platform, and the following conversation transpired
19  with the online UC agent. In the following synopsis of the Omegle communication
20  chat, ELGIN aka "Colin" is identified as "CE" and the UC agent is identified as
21  "UC":

22

23

24  [1] OMEGLE is a free online chat platform that allows users to anonymously chat with one another.
25  OMEGLE matches individuals in a private chat setting sometimes based off of key similarities or
    keywords.  On the OMEGLE platform both individuals can chat anonymously about any topic.
26  On some occasions individuals chatting on OMEGLE can exchange contact information to further
    the communication off of the OMEGLE platform and onto other forms of communications such
27  as E-mail and phone communication.

3

| CE | Hey, 28m |
|----|----------|
| UC | Hi hi<br><br>12/f/Eastlake1[2] |
| CE | Oh, cool. How are you? |
| UC | I'm cool bored n u? |
| CE | Really bored too. I'm Colin, Whats your name? |
| UC | I'm ari. Wuts ur name ? |
| CE | Colin<br><br>It's nice to meet you. I'm glad you don't mind my age. |
| UC | Yea idc about ur age. Do u care about mine? |
| CE | Not in a bad way.  I actually like girls your age.  They're cute. |
| UC | Hahaha well idk about the rest of them but I know im cute(emoji)<br><br>What's ur name |
| CE | Haha! I am lucky then.<br><br>I've said it twice silly.<br><br>My name is Colin |
| UC | Ooo hahaha I thought u wur saying Coolin hahahah a |

---

[2] On OMEGLE, initial communications typically begin with the user indicating age, sex, and location.

4

| | |
|---|---|
| CE | Hahaha. Silly girl. You are right, you're totally cute.<br><br>Do you have a boyfriend? |
| UC | (Emoji)<br><br>And no I don't<br><br>U have a girlfriend? |
| CE | I kind of want to see if you could be my girlfriend. |
| UC | Me!!? Hahaha but I don't even know u yet |
| CE | I mean, yes, I know. But I want to get to know you. |
| UC | Ooo okay (Emoji) |
| CE | But like, while I do, I want you to know that I want to try dating you. If that's not too much. |
| UC | Haha no that's not to much<br><br>U live in Eastlake? |
| CE | Okay. Good<br><br>And, I don't. But it wouldn't be hard to get over there.<br><br>I'm like 20 mins away, by car. |
| UC | Oooo okay hahaha cause obvious I can't drive yet hahaha |
| CE | Yes, of course, baby. I can always come to you. Do you ever get to hang out anywhere I could meet you for dates? |

| UC | I walk to the park sometimes after school |
|---|---|
| CE | See, that'd be perfect. We could just find somewhere to hang out and talk. Or kiss :) |
| UC | (Emoji). What else? |
| CE | I'd love to try everything with you.<br><br>Have you kissed a boy? |
| UC | Yea I have haha duh. N whats everything?<br><br>Haha |
| CE | I want to fuck you. Not just once, but a lot. In a lot of different ways. |
| UC | Hahaha idk though I still have my v card. My friend says it hurts the first time |
| CE | I wouldn't rush you to lose it. I am pretty thin though, so it wouldn't hurt to bad<br><br>Do you have kik or snap we can talk on? |
| UC | Hmm okay that make me feel better cause I don't want it to hurt<br><br>Smh no my mom wont tell me the psswrd go apple store so I can't download any apps. She don't want me to have them |
| CE | No, I am really wanting to make it feel good for you. It will. |
| UC | Hmmmm okay haha |

| CE | So, how am I supposed to talk to you after today? :( |
|----|------------------------------------------------------|
| UC | Hmm idk.. I have a i phone.. |
| CE | Would you give me your number? Or do you want to agree to meet first and exchange numbers there? |
| UC | Hmm I guess I can give you my number. U seem cool n safe |
| CE | I'd like that. I don't want to hurt you, just make you feel good. But if you aren't sure, you don't have to give it right now |
| UC | Well it's up to you. If you want it Ill give u my number |
| CE | I want it |
| UC | Lol okay its 6193029219<br><br>Ima prob get off of here soon anyway |
| CE | Okay, I'll text you until you want to go. Then over the phone |
| UC | Okay (Emoji)<br><br>Is that u that just text me? 0850? |
| CE | Yep. |
| UC | Okay (Emoji) |

7.    The UC received a text message from phone number 951-723-0850.
Based upon records checks, agents identified this phone number as belonging to
ELGIN. Communications between the UC and ELGIN continued on October 27,

7

2018, through text message. During the course of those communications, the UC reiterated "she" had not had her first period and did not have "boobs." In response, ELGIN stated "I'm glad. I want to suck on your nipples and make them hard," and "Also, that means we don't have to wear a condom and Daddy can cum in you as much as he likes."

8.     ELGIN texted the UC on the morning of October 28, 2018, and communications continued thereafter through November 1, 2018. During communications between the UC and ELGIN on October 29, 2018, ELGIN attempted to send pictures of himself. When the pictures would not go through on text message, ELGIN asked the UC for an email address. Shortly thereafter, the UC received a picture of an adult male from the email address emraldmonth@gmail.com. ELGIN also sent the UC agent a picture of an erect male penis being held by one hand. Agents were unable to confirm this email address belonged to ELGIN. However, agents compared the photo sent of the adult male with ELGIN's driver's license photo and confirmed it was the same individual.

9.     The conversation between ELGIN and the UC continued though text messages and E-mail, with ELGIN telling the UC he would like to meet "her" in person and engage in sexual acts with "her." ELGIN asked the UC about meeting on Thursday (i.e. November 1st), and a discussion ensued about where they could meet. The UC told ELGIN "she" was a student and lived in the Eastlake area of San Diego. ELGIN and the UC made plans to meet on November 1, 2018, near the Eastlake Mall, in Otay Mesa, California, within the Southern District of California, around 5:00 p.m. On Thursday November 1, 2018, at 8:40 a.m., ELGIN texted the UC regarding what he would want to do when they met:

| ELGIN | I am going to kiss you today |
|---|---|
| | And while we're eating ice cream, I'm going to let you sit on my lap and I'm going to put my hands in your pants to play with your pussy. |
| | And I'm going to let you lick and play with my cock if you can. |
| | I wish we even had a spot to have sex, because I want you so badly. I don't need to be reminded of how much I want you. |

10.     Agents conducted surveillance at the Jack-in-the-Box Restaurant located near the Eastlake Mall prior to the planned meeting time. At approximately 4:30 p.m., Agents observed an individual matching the description of ELGIN arrive to the meeting location. The UC agent and ELGIN had a conversation through text in which the UC agent informed ELGIN that the UC agent would be "at the jack n the box". Surveillance agents observed an individual matching the description of ELGIN walking to the Jack in the Box. Agents identified themselves and placed the individual, who was identified as ELGIN, under arrest.

11.     Incident to ELGIN's arrest on November 1, 2018, agents seized a **Black Pixel 3 Google Cellular Phone** and a **black Amazon tablet (Model SV98LN, FCC ID:2AETF-1013)** from ELGIN's possession. The UC agent placed a call from the UC cell phone to the phone number 951-723-0850. Agents observed the **Black Pixel 3 Google Cellular Phone** begin to ring and display the UC phone number.

12.     ELGIN was advised of his Miranda rights. He waived those rights and made a statement. ELGIN admitted he had been texting with a girl who appeared to be 12-years-old, and admitted that most of the conversations were sexual. ELGIN admitted that he sent a picture of his penis and his face during the communications. ELGIN told agents, however, that he suspected the person he was communicating with was law enforcement and went forward with the meeting as a way of getting help. ELGIN told agents he possessed "hardcore" videos of children, who he

9

believed to be six or seven-years-old, at his residence. ELGIN also admitted he previously "had a relationship" with a 12-year-old minor female who lives in New Hampshire, which ended in May of 2018. ELGIN stated that he utilized online services, such as Skype (a telecommunications application software product that provides video chat and voice calls between computers, tablets, and other mobile devices), to communicate with the minor.

13.     ELGIN consented in writing to a search of his residence, located in Imperial Beach, California. Agents went to the residence and located a **Black Lenovo Laptop (Product ID 259842U- MAC Address C80AA99C4E3A),** a **Black Motorola Cell Phone (0168),** and a **Black Crosstour 1090P WiFi**. Agents seized these items from the residence pursuant to ELGIN's written consent on November 1, 2018. The items were transported to the HSI Offices at 880 Front Street, Suite 3200, San Diego, CA, and remain at that location.

14.     As a result of my training and experience in child sexual exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the sexual exploitation of children:

a.     Individuals who sexually exploit children may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b.     Individuals who sexually exploit children may collect sexually explicit or suggestive materials and oftentimes use these materials for their own sexual arousal and gratification. Furthermore, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child

1  partner, or to demonstrate the desired sexual acts.  Many of these communications
2  are done online via email or instant messaging.

3  c.  Individuals who sexually exploit children almost always possess
4  and maintain their child pornographic material and other images of children used in
5  their sexual exploitation, that is, their pictures, films, videos, correspondence,
6  mailing lists, etc., in the privacy and security of their home or secure online accounts.
7  These individuals typically retain this information for many years.

8  d.  Likewise, individuals who sexually exploit children often
9  maintain their child pornography, other images of children, and discussions about
10  the sexual exploitation of children in a safe, secure and private environment, such as
11  an online account, computer, cellular phone, or in their residence.  These collections
12  are often maintained for several years and are kept accessible, to enable the collector
13  to view this material, which is valued highly.

14  e.  Individuals who sexually exploit children often correspond with
15  and/or meet others to share information and materials; are rarely able to completely
16  destroy correspondence from other child pornography distributors/collectors;
17  conceal correspondence as they do their sexually explicit material; and often
18  maintain lists of names, addresses, and telephone numbers of individuals with whom
19  they have been in contact and who share the same interests in child pornography or
20  the sexual exploitation of children.

21  f.  Individuals who sexually exploit children prefer not to be
22  without their child pornography and other images of children for any prolonged time
23  period.  Storage of this content in email accounts or cloud-based storage accounts
24  gives the offender the ability to access it from any computer.

25  g.  Oftentimes, individuals who sexually exploit children will
26  download and store images and communications of children they know or with
27  whom they have communicated.  These images many not necessarily be

11

pornographic or obscene in nature, however they are often used for their own sexual gratification.

15.     Email and social media users, to include individuals who sexually exploit children, often save online messages for extended periods of time.   This information is usually saved automatically for the convenience of users.   During the course of my investigative duties, I have reviewed dozens of email and social media accounts, many of which contain messages that date back to the creation of the account.     Furthermore, online users communicating with other like-minded individuals often save messages so they can keep track of communications and easily re-contact each other.

16.     Based on the foregoing information, there is reason to believe evidence and instrumentalities pertaining to violations of 18 U.S.C. §§ 2252, 2252A, and 2242(b), may exist on the **Target Devices**. Specifically, the **Target Devices** were seized from ELGIN, who communicated with a UC who he believed to be a 12-year-old minor female, and arranged to meet to engage in sexual activity. Further, ELGIN admitted to agents after his arrest that he had previously engaged in similar communications with another 12-year-old in New Hampshire, and that he possessed "hardcore" videos of young children.

**PROCEDURES FOR ELECTRONICALLY STORED INFORMATION AS TO THE COMPUTER AND OTHER ELECTRONIC STORAGE DEVICES**

17.     With the approval of the Court in signing this warrant, agents executing this search warrant will employ the following procedures regarding computers and other electronic storage devices, including electronic storage media that may contain data subject to seizure pursuant to this warrant:

<u>Seizure and Retention of Instrumentalities</u>

a.     Based upon the foregoing, there is probable cause to believe that any computers and other electronic storage devices encountered during this search

1    are instrumentalities of the enumerated offenses because there is probable cause to
2    believe that they may contain contraband and fruits of crime as provided under Rule
3    41(c)(2), Fed. R. Crim. P., or were used in committing crime as provided under Rule
4    41(c)(3), Fed. R. Crim. P.  Consequently, the computers and any other electronic
5    storage devices are subject to seizure, retention and possible forfeiture and
6    destruction.   Computers, other electronic storage devices and media confirmed
7    onsite to contain contraband constitute fruits of crime or to have been used to commit
8    a crime will not be returned but will be imaged offsite and analyzed as provided
9    beginning at subparagraph (c) below.  The onsite confirmation may be provided by
10   an owner or user of the computer or storage device or, if feasible, may be obtained
11   by conducting a limited onsite forensic examination to determine if the subject media
12   contains any contraband or otherwise is an instrumentality.  Computers and other
13   electronic storage devices and media that are not confirmed onsite as
14   instrumentalities will be taken offsite for imaging and preliminary analysis in
15   accordance with subparagraph (b) below.

16            b.    The offsite imaging and preliminary analysis of computers, other
17   electronic storage devices and media to confirm their status as instrumentalities will
18   be conducted within forty five (45) days of seizure.  Seized items confirmed to be
19   instrumentalities will not be returned and will be further analyzed as provided below.
20   If the preliminary analysis, by definition an incomplete or partial analysis, does not
21   confirm that a seized item is an instrumentality, the original item will be returned
22   promptly to its owner, absent an extension of time obtained from the owner or from
23   the court. An image of the items will be retained and subjected to a complete forensic
24   analysis, as provided below.

25            c.    Computers and other electronic storage devices and media that
26   are retained as instrumentalities will not be returned to its owner.  The owner will be
27   provided the name and address of a responsible official to whom the owner may

apply in writing for return of specific data not otherwise subject to seizure for which the owner has a specific need. The identified official or other representative of the seizing agency will reply in writing. In the event that the owner's request is granted, arrangements will be made for a copy of the requested data to be obtained by the owner. If the request is denied, the owner will be directed to Fed. R. Crim. P. 41(g).

Identification and Extraction of Relevant Data

d.     A forensic image is an exact physical copy of the hard drive or other media. After obtaining a forensic image, the data will be analyzed to identify and extract data subject to seizure pursuant to this warrant. Analysis of the data following the creation of the forensic image can be a highly technical process requiring specific expertise, equipment and software. There are literally thousands of different hardware items and software programs, and different versions of the same program, that may be commercially purchased, installed and custom-configured on a user's computer system. Computers are easily customized by their users. Even apparently identical computers in an office environment may be significantly different with respect to configuration, including permissions and access rights, passwords, data storage and security. It is not unusual for a computer forensic examiner to have to obtain specialized hardware or software, and train with it, in order to view and analyze imaged data.

e.     Analyzing the contents of a computer or other electronic storage device, even without significant technical issues, may be very challenging. Searching by keywords, for example, often yields many thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant hit does not end the review process. The computer may have stored information about the data at issue: who created it; when and how it was created or downloaded or copied; when it was last accessed; when it was last modified; when it was last printed; and, when it was

deleted. Sometimes it is possible to recover an entire document that never was saved to the hard drive if the document was printed. Moreover, certain file formats do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications do not store data as searchable text. The data is saved in a proprietary non-text format. Documents printed by the computer, even if the document never was saved to the hard drive, are recoverable by forensic programs but not discoverable by keyword searches because the printed document is stored by the computer as a graphic image and not as text. Similarly, faxes sent to the computer are stored as graphic images and not as text. In addition, a particular relevant piece of data does not exist in a vacuum. To determine who created, modified, copied, downloaded, transferred, communicated about, deleted or printed the data requires a search of other events that occurred on the computer in the time periods surrounding activity regarding the relevant data. Information about which user had logged in, whether users share passwords, whether the computer was connected to other computers or networks, and whether the user accessed or used other programs or services in the time period surrounding events with the relevant data can help determine who was sitting at the keyboard.

f.      It is often difficult or impossible to determine the identity of the person using the computer when incriminating data has been created, modified, accessed, deleted, printed, copied, uploaded or downloaded solely by reviewing the incriminating data. Computers generate substantial information about data and about users which generally is not visible to users. Computer-generated data, including registry information, computer logs, user profiles and passwords, web-browsing history, cookies and application and operating system metadata, often provides evidence of who was using the computer at a relevant time. In addition, evidence such as electronic mail, chat sessions, photographs and videos, calendars and address books stored on the computer may identify the user at a particular, relevant time.

The manner in which the user has structured and named files, run or accessed particular applications, and created or accessed other, non-incriminating files or documents, may serve to identify a particular user. For example, if an incriminating document is found on the computer but attribution is an issue, other documents or files created around that same time may provide circumstantial evidence of the identity of the user that created the incriminating document.

g.    Analyzing data has become increasingly time-consuming as the volume of data stored on a typical computer system and available storage devices has become mind-boggling. For example, a single megabyte of storage space is roughly equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is roughly equivalent of 500,000 double-spaced pages of text. Computer hard drives are now being sold for personal computers capable of storing up to 2 terabytes (2,000 gigabytes) of data. And, this data may be stored in a variety of formats or encrypted (several new commercially available operating systems provide for automatic encryption of data upon shutdown of the computer). The sheer volume of data also has extended the time that it takes to analyze data. Running keyword searches takes longer and results in more hits that must be individually examined for relevance. And, once reviewed, relevant data leads to new keywords and new avenues for identifying data subject to seizure pursuant to the warrant.

h.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including the use of hashing tools to identify evidence subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as a known operating system and application files. The identification and extraction process may take weeks or months. The personnel conducting the identification and extraction of data

1  will complete the analysis within one-hundred twenty (120) days from the date of
2  seizure pursuant to this warrant, absent further application to this court.

3          i.     All forensic analysis of the imaged data will employ search
4  protocols directed exclusively to the identification and extraction of data within the
5  scope of this warrant.

6  **PROCEDURES FOR ELECTRONICALLY**
7  **STORED INFORMATION ON CELLULAR TELEPHONES**

8      18.    It is not possible to determine the nature and types of services to which
9  the device is subscribed and the nature of the data stored on the device until one
10 accesses the device. Cellular devices today can be simple cellular telephones and
11 text message devices, can include cameras, can serve as personal digital assistants
12 and have functions such as calendars and full address books can be mini-computers
13 allowing for electronic mail services, web services, and rudimentary word
14 processing. An increasing number of cellular service providers now allow for their
15 subscribers to access their device over the internet and remotely destroy all of the
16 data contained in the device. For that reason, the device may only be powered in a
17 secure environment or, if possible, started in "flight mode" which disables access to
18 the network. Unlike typical computers, many cellular telephones do not have hard
19 drives or hard drive equivalents and store information in volatile memory within the
20 device or in memory cards inserted into the device. Current technology provides
21 some solutions for acquiring some of the data stored in some cellular telephone
22 models using forensic hardware and software. Even if some of the stored
23 information on the device may be acquired forensically, not all of the data subject to
24 seizure may be so acquired. For devices that are not subject to forensic data
25 acquisition or that have potentially relevant data stored that is not subject to such
26 acquisition, the examiner must inspect the device manually and record the process

27

1   and the results using digital photography.  This process is time intensive and may
2   take weeks or longer.

3       19.    Following the issuance of this warrant, I will collect the subject cellular
4   telephone(s) and subject it/them to analysis.  All forensic analysis of the data
5   contained within the telephone(s) and its memory cards will employ search protocols
6   directed exclusively to the identification and extraction of data within the scope of
7   this warrant.

8       20.    Based on the foregoing, identifying and extracting data subject to
9   seizure pursuant to this warrant may require a range of data analysis techniques,
10  including manual review, and consequently, may take weeks or months.  The
11  personnel conducting the identification and extraction of data will complete the
12  analysis within ninety (90) days, absent further application to this court.

13  **GENUINE RISK OF DESTRUCTION OF DATA**

14      21.    Based upon my experience and training, and the experience and training
15  of other agents with whom I have communicated, electronically stored data can be
16  permanently deleted or modified by users possessing basic computer skills.  The
17  **Target Devices** to be searched are in the possession of law enforcement.

18  **PRIOR ATTEMPTS TO OBTAIN DATA**

19      22.    The United States has not attempted to obtain this data by other means.

20  //
21  //
22  //
23  //
24  //
25  //
26  //
27

1
## CONCLUSION

2      23.    Based on the foregoing factual information, I respectfully submit that

3  there is probable cause to believe that evidence, fruits, and instrumentalities of

4  violations of 18 U.S.C. §§ 2252, 2252A, 2422(b), as described in Attachment B, will

5  be found within the **Target Devices** to be searched, as identified in Attachment A.

6

7

8

9                                             Kayade Ereme
                                              Special Agent
10                                            Homeland Security Investigations

11
Subscribed and sworn before me this  day of November, 2018.
12

13

14

15                                            Hon. ROBERT A. McQUAID
                                              United States Magistrate Judge
16

17

18

19

20

21

22

23

24

25

26

27

## ATTACHMENT A

## DESCRIPTION OF ITEM TO BE SEARCHED

The item to be searched are the following:

- **Black Pixel 3 Google Cellular Phone,**
- **Black Amazon tablet (Model SV98LN, FCC ID:2AETF-1013)**
- **Black Lenovo Laptop (Product ID 259842U, MAC Address C80AA99C4E3A),**
- **Black Motorola cell phone ( 0168),**
- **Black Crosstour 1090P WiFi**

located at the San Diego Homeland Security Investigations Office , 880 Front Street, Suite 3200, San Diego, CA 92101, in the Southern District of California.

## ATTACHMENT B
### ITEMS TO BE SEIZED

Authorization is sought to search for and seize evidence that relates to violations of 18 U.S.C. §§ 2252, 2252A, and 2422(b). Authorization includes the search of electronic data to include deleted data, remnant data and slack space. The seizure and search of computers and computer media will be conducted in accordance with the "Procedures For Electronically Stored Information As To The Computer And Other Electronic Storage Devices" provided in the affidavit submitted in support of this warrant. Items to be seized include the following:

a.   All computer systems, software, peripherals and data storage devices.

b.   All documents, including all temporary and permanent electronic files and records, (including, but not limited to, JPG, GIF, TIF, AVI, WAV and MPEG files) which contain, attach, or describe child pornography or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

c.   User-attribution data to include data reflecting who used or controlled the computer or electronic storage device at or around the time that data reflecting criminal activity within the scope of this warrant was created, accessed, deleted, modified, copied, downloaded, uploaded or printed. User-attribution data includes registry information, computer logs, user profiles and passwords, web-browsing history, cookies, electronic mail stored on the computer or device, electronic address books, calendars, instant messaging logs, electronically-stored photographs and video, file structure and user-created documents, including metadata.

d.   Any and all materials or items which are sexually arousing to individuals who are interested in minors, but which are not in and of themselves obscene or which do not necessarily depict minors involved in sexually explicit conduct. Such material is commonly known as "child erotica" and includes written materials dealing with child development, sex education, child pornography, sexual

abuse of children, incest, child prostitution, diaries about sexual contact with children, and fantasy writings relating to children.

  e. Any record or document that shows the offer to transmit or receive any depictions of a minor engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

  f. Electronically stored communications or messages reflecting computer on-line chat sessions or e-mail messages with any persons regarding the possession, receipt, distribution, advertising and/or reproduction of child pornography, as defined in as defined in 18 U.S.C. § 2256.

  g. Any documents, records, programs, or applications that identify the owners of the TARGET DEVICES, and identifying the Internet service used by the TARGET DEVICES.

  h. For any computer hard drive or other electronic media found to contain information otherwise called for by this warrant:

    1. Evidence of software that would allow others to control the computer, such as viruses, Trojan horses, and other forms of malicious software;

    2. Evidence of the lack of such malicious software;

    3. Evidence of the attachment to the computer of other storage devices, disks, CD-ROMs, or similar containers for electronic evidence; and

    4. Documentation and manuals that may be necessary to access or conduct an examination of the computer.

  i. Information relating to the install date of the computers' operating systems, presence of file-sharing programs (including install date, whether the program was set up for sharing, etc.) or other programs for distribution of electronic

files including child pornography or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §§ 2252 and 2252A.

j.     Any and all usernames, email accounts, or online identities that may have been used for the sexual exploitation of minors or for communications with individuals sharing an interest in the sexual exploitation of children.

k.     A cellular telephone device and any storage devices, such as SIM cards or flash memory devices attached to, inserted in or seized with the device, will be analyzed and the following data will be seized only to the extent that it contains or depicts evidence of violations of 18 U.S.C. §§ 2252, 2252A, and 2422(b), and in accordance with the "Procedures For Electronically Stored Information As To Any Cellular Telephone" provided in the affidavit submitted in support of this warrant, including evidence reflecting use, dominion and control of the device:

1.     Communications, records, or data, including emails, text messages, photographs, audio files, videos, or location data:

a.     tending to indicate efforts to persuade, induce, entice or coerce an individual under the age of 18 to engage in sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. § and 2422; or tending to indicate efforts to distribute, receive, possess or view child pornography as defined by 18 U.S.C. § 2256;

b.     tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to send, receive, possess or access child pornography as defined by 18 U.S.C. § 2256, or efforts to entice an individual under the age of 18 to engage in sexual activity for which any person can be charged with a criminal offense;

c.     tending to identify co-conspirators, criminal associates, or others involved in the activities described in paragraph k(1)(a), above;

           d.      tending to identify the user of, or persons with control over or access to, the subject phone; or

           e.      tending to place in context, identify the creator or recipient of, or establish the time of creation, receipt or modification of communications, records, or data above.